UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANNETTE S. WHITTEN, )
 )
        Plaintiff, )
 )
vs. )
 )  No. 1:13-cv-01119-SEB-MJD
CAROLYN W. COLVIN Acting )
Commissioner of the Social Security )
Administration, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Annette Whitten ("Whitten") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter for further proceedings.

### I. Procedural History

Whitten filed an application for DIB and SSI on September 28, 2010, alleging an onset of disability as of April 29, 2007. Whitten's applications were denied initially on December 21, 2010 and denied on reconsideration on March 7, 2011. Whitten timely requested a hearing,

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

which was held before Administrative Law Judge Tammy Whitaker ("ALJ") on January 11, 2012. The ALJ's April 27, 2012 decision again denied Whitten's applications for DIB and SSI. The Appeals Council denied Whitten's request for review on June 10, 2013, making the ALJ's decision the final decision for purposes of judicial review. Whitten timely filed her Complaint with this Court on July 12, 2013.

## II. Factual Background and Medical History

Whitten, now fifty-six years old, reported in her application in 2010 that she has right-hand nerve damage, depression, and problems with her left leg. [R. at 176.] Whitten reported that her dominant right wrist and hand were broken in 2007 and that the injury did not heal correctly. [R. at 180.] As a result, Whitten reported that there are many things she can no longer do, such as fasten her clothing, tend to flowers, and cook meals other than microwaveable meals. [R. at 182-185.] Whitten reported that she takes Tylenol for pain and occasionally wears a wrist brace. [R. at 178, 187.] Also in 2010, Whitten's friend, Phil Smarr, submitted a third-party function report that largely corroborates Whitten's reported difficulties with her right hand. [R. at 190-92.] Smarr also reported that Whitten "drops things easily" when she uses her right hand too much. [R. at 195.]

Whitten has visited an array of medical practitioners regarding her physical ailments since her alleged onset date in 2007. On April 2, 2009, Dr. Foster Afulukwe conducted a consultative examination and noted that Whitten's right wrist was swollen and deformed, with a range of motion reduced by about thirty to forty percent. [R. at 257.] Additionally, Whitten had difficulty extending her right wrist and pushing against Dr. Afulukwe, though she was able to grip his fingers normally when asked to do so. [*Id.*] Dr. Afulukwe also noted that Whitten was wheezing and had rhonchi scattered throughout her lungs, "consistent with cigarette smoking

induced [sic] chronic lung problems." [R. at 257-58.] On November 16, 2010, Dr. Doug Poplin diagnosed Whitten with chronic right wrist pain, from possible post-traumatic osteoarthritis or non-union after fracture, and right lateral epicondylitis in a consultative examination. [R. at 274.] Dr. Poplin reported that Whitten's ability to perform gross grasping and fine motor tasks with her right hand was "moderately decreased." [R. at 273.] Dr. Poplin also noted that Whitten had a barrel chest deformity and bilateral wheezes and diagnosed Whitten with chronic obstructive pulmonary disease. [R. at 273-74.]

State agency medical consultant Dr. J. V. Corcoran completed a residual functional capacity assessment on December 2, 2010 and reported that Whitten could only occasionally use her right hand for fingering or handling. [R. at 296.] Additionally, Dr. Corcoran assessed that Whitten could occasionally lift or carry a maximum of twenty pounds and could stand for a total of six hours in an eight-hour workday. [R. at 294.] Dr. Corcoran indicated that Whitten could only occasionally climb stairs, could never crawl or climb ladders, and should avoid concentrated exposure to wetness and respiratory irritants. [R. at 295, 297.] Dr. J. Sands, also a state agency medical consultant, reviewed and affirmed Dr. Corcoran's assessment on March 5, 2011. [R. at 302.]

On May 9, 2011, Whitten visited the emergency room, reporting that she had fallen in the bath a week prior and was experiencing pain in her right elbow. [R. at 310.] After an x-ray was administered, Dr. Gary Thompson diagnosed Whitten with an elbow and forearm sprain and gave her an arm sling. [R. at 312, 317] Whitten was discharged from the emergency room the same day. [R. at 326.] On July 28, 2011, Dr. Margarita Wiersema prescribed Indocin to treat Whitten's wrist pain. [R. at 329.]

3

Whitten was twice evaluated by consultative psychologists regarding her emotional and mental condition. [R. at 260-65.] On July 7, 2009, Dr. Carrie Dixon evaluated Whitten and did not diagnose Whitten with any mental or emotional impairments. [R. at 261.] On November 15, 2010, Dr. Nicole Taylor diagnosed Whitten with moderate major depression disorder. [R. at 265.] Whitten reported to Dr. Taylor that her depression stemmed from several personal incidents, including the loss of family members and separation from her spouse. [*Id.*] State agency reviewing psychologist Dr. Horton Randal opined on December 2, 2010 that Whitten's depression imposed only mild functional limitations [R. at 282-91] and was "not severe" [R. at 279], an assessment that Dr. Neville Kenneth affirmed on February 25, 2011 [R. at 301].

At her hearing on January 11, 2012, Whitten testified about her difficulties stemming from her right hand, wrist, and arm ailments. [R. at 53-67.] Vocational expert Robert Barker ("VE") also testified at the hearing and identified just one job, "usher," that satisfied Whitten's restrictions. [R. at 46.] The VE identified the job of "usher" as "light; unskilled; with an SVP of 2; DOT code is 344.677-010" and stated that "1,230 [jobs] exist in the State of Indiana; 78,700 nationally." [R. at 46-47.] According to the VE, there was no other example available because of the dominant hand "only being able to occasionally finger and handle." [*Id.*] The VE affirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") [R. at 51] and was not asked any questions by Whitten's counsel [R. at 52, 70].

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability according to 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

4

than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant *is* disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; (5) if the claimant can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in his decision; she must "build an accurate and logical bridge from the evidence to [her] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

The ALJ first determined that Whitten meets the insured status requirements of the Act through June 30, 2010 and has not engaged in substantial gainful activity (SGA) since the alleged onset date of April 29, 2007. [R. at 21.] At step two, the ALJ found that Whitten's right lateral epicondylitis, chronic obstructive pulmonary disease, chronic right wrist pain, and right elbow osseous fragment are severe impairments that significantly limit her ability to perform basic work activities. [R. at 21-25.] However, at step three the ALJ found that Whitten does not have an impairment or combination of impairments that meet(s) or medically equal(s) one of the listed impairments. [R. at 25-26.]

After step three but before step four, the ALJ determined that Whitten has the residual functional capacity (RFC) to perform work within the range of light work provided for by the Act. [R. at 26-30.] Specifically, the ALJ found that:

> She can never push or pull hand or arm controls. She can never crawl or climb ladders, ropes, or scaffolds. She can climb ramps or stairs occasionally. She can frequently balance, stoop, crouch, and kneel. She can use her dominant right hand for handling i.e. gross manipulation on an occasional basis and has no limitations in using her non-dominant left hand for handling i.e. gross manipulation. She can use her dominant, right hand for fingering i.e. fine manipulation on an occasional basis and has no limitations in using her non-dominant left hand for fingering i.e. fine manipulation. She must avoid concentrated exposure to extreme cold; extreme heat; and respiratory irritants, such as, fumes, odors, dust, and gases. She must also avoid concentrated exposure to unprotected heights, dangerous machinery, and slippery or uneven walking surfaces. Her work must allow her to be off task for 5% of the work day in addition to regularly scheduled breaks.

[*Id.*] At step four, because Whitten's prior work as a cleaner, housekeeper, cook, home restoration cleaner, and stocker exceeds Whitten's RFC, the ALJ found that Whitten is unable to perform her past relevant work. [R. at 30.] However, at step five, the ALJ found that Whitten can perform the job of usher, which exists in significant numbers in the national economy. [R. at

30-31.] Because of these findings, the ALJ concluded that Whitten is not disabled, as defined by the Act. [R. at 31.]

## V. Discussion

Whitten only challenges the ALJ's step-five determination and contends that "there is not substantial evidence that the job of usher, DOT code number 344.677-014, exists in significant numbers in the national economy." [Dkt. 17 at 5.] The Commissioner, in response, argues that the ALJ's finding was supported by substantial evidence because the ALJ properly relied upon the VE's testimony. [Dkt. 18 at 3.]

"The Commissioner bears the step-five burden of establishing that the claimant can perform . . . work that 'exists in significant numbers in the national economy.'" *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1560(c)(2)) (citing *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). While a VE's testimony can satisfy the Commissioner's burden of proving that sufficient work exists, Social Security Ruling 00-4p ("the Ruling") imposes upon an ALJ the responsibility to obtain a reasonable explanation for any "apparent conflict[s]" between the VE's testimony and the DOT. *Id.* at 462-63 (quoting S.S.R. 00-4p). Even when an apparent conflict is identified, the conflict only warrants reversal if it is material. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2006); *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006).

From the outset, the Commissioner contends that Whitten is barred from raising a violation of the Ruling for the first time on appeal, citing to *Donahue v. Barnhart* in support of the proposition. 279 F.3d 441, 447 (7th Cir. 2002); [Dkt. 18 at 6]. However, *Donahue* was decided before the Ruling went into effect, 279 F.3d at 446, and the Seventh Circuit has more recently held that "a claimant's failure to raise a possible violation of SSR 00-4p at the

7

administrative level does not forfeit the right to argue later that a violation occurred," *Overman*, 546 F.3d at 463 (citing *Prochaska*, 454 F.3d at 735). However, when the issue is raised for the first time on appeal, the claimant must identify a conflict between the VE's testimony and the DOT that is (1) actual, (2) material, and (3) apparent in order to demonstrate that remand is warranted due to a violation of the Ruling. *See Overman*, 546 F.3d at 463 (holding that a claimant must identify an apparent conflict upon appeal after failing to identify a conflict at the hearing); *Terry*, 580 F.3d at 478 (holding that any error is harmless if there is no actual conflict between the VE's testimony and the DOT); *Prochaska*, 454 F.3d at 735-36 (holding that a conflict must be material to the ALJ's step-five determination to warrant attention on remand).

To establish that actual error exists, Whitten asserts that the VE's testimony identifying "usher, DOT code number 344.677-010" was in error. [Dkt. 17 at 1.] Whitten points out that DOT code number 344.677-0**10** is the code number for "press-box custodian" and that the correct DOT code for usher is 344.677-0**14**. [*Id.* at 1-2.] The Commissioner, in response, concedes that the VE's identification of "usher" as 344.677-0**10** was indeed incorrect. [Dkt. 18 at 4-5]; s*ee* DICOT § 344.677-014, 1991 WL 672865 ("Usher"); DICOT § 344.677-010, 1991 WL 672864 ("Press-Box Custodian"). Thus, the record establishes that an actual conflict between the VE's testimony and the DOT exists.

Whitten further asserts that the misidentification of "usher" is material, meeting the second requirement needed to establish a violation of the Ruling, because there is no evidence establishing that the VE's testimony regarding job availability pertains to the correct job. [Dkt. 17 at 5.] In response, the Commissioner admits that it is "quite possible" that the VE was giving

8

testimony as to the number of jobs available for "press-box custodian."[2] [Dkt. 18 at 4.] When a conflict leaves the accuracy of the VE's testimony to the availability of appropriate jobs in doubt, the conflict is material. *See Overman*, 546 F.3d at 462-64 (finding testimony error material because the conflict caused the availability of appropriate jobs to be called into question); *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 798-800 (N.D. Ind. 2012) (finding testimony error materiel because plaintiff was not able to perform the jobs cited). Since it is "quite possible" that, due to the conflict between the VE's testimony and the DOT, no support was provided whatsoever for the ALJ's finding of sufficient "usher" job availability, the Court should find that the conflict is material.

Finally, Whitten asserts that the error was apparent, meeting the third requirement needed to establish a violation of the Ruling, because it is "inconceivable" that there are 1,230 usher positions in Indiana. [Dkt. 17 at 15.] The Commissioner responds that any error in the VE's testimony was not, in fact, so apparent. [Dkt. 18 at 6-7.] An apparent conflict is one that is "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman*, 546 F.3d at 463 (citing *Prochaska*, 454 F.3d at 735). When an error in the VE's testimony would require the ALJ to examine whether the requirements of a particular job align with a claimant's limitations, courts have generally found the error to not be sufficiently apparent. *See, e.g.*, *Merritt v. Astrue*, 872 F. Supp. 2d 742, 757 (N.D. Ill. 2012) (finding testimony error nonobvious when the jobs cited did not align with the plaintiff's limitations on his non-dominant arm); *Russell v. Astrue*, 09 C 5702, 2012 WL 645937 at *16-17 (N.D. Ill. Feb. 24, 2012) (finding testimony error nonobvious when the jobs cited allowed only occasional standing and walking but the plaintiff's limitations required a sit/stand option). However, conflicts that are readily

---

[2] Whitten's RFC as established by the ALJ restricts her to "occasional" handling with her dominant hand while "press-box custodian" requires "[f]requent" handling. [R. at 26]; DICOT 344.677-010. Any job numbers given by the VE that are actually attributable to "press-box custodian" are not jobs that Whitten can perform.

9

identifiable without requiring additional interpretation by the ALJ meet the standard that the error be sufficiently obvious. *See Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 798-800 (N.D. Ind. 2012) (finding that the conflicts were "apparent from the very terms of the positions' descriptions [in the DOT]" and could have been resolved with a quick review of the DOT). In this matter, the error was merely an incorrect digit in the code number of the job cited by the VE, which facial error is readily identifiable without the in-depth review described in *Merritt* and *Russell*. Because the error here could have been resolved by a quick review of the DOT by the ALJ, the Court should, as seen in *Dross-Swart*, find that the conflict between the VE's testimony and the DOT was sufficiently apparent to warrant remand.

Where an ALJ has based her step-five finding entirely on a VE's erroneous testimony, "the ALJ's disability determination is not supported by substantial evidence." *Overman*, 546 F.3d. at 465 (citing *Boone v. Barnhart*, 353 F.3d 203, 206, 208–09 (3d Cir. 2003); *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000)); *see also Britton*, 521 F.3d at 803 ("A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated.") (citing *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). In this matter, as in *Overman*, the ALJ's step-five finding is based entirely upon the VE's erroneous testimony, and the ALJ's determination that Whitten is not disabled is not supported by substantial evidence. Therefore, the Court should reverse and remand the ALJ's disability determination for lack of substantial evidence. However, nothing in this opinion should be interpreted by the Commissioner to suggest that Whitten is, in fact, entitled to DIB or SSI benefits.

## VI. Conclusion

For the aforementioned reasons, the Court should find that substantial evidence does not support the ALJ's determination that Whitten is not disabled. The District Judge should therefore **REVERSE** and **REMAND** the matter to the Social Security Administration for further proceedings. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 06/19/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov